**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANIEL ZEMEL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>CSC HOLDINGS, LLC,<br><br>Defendants. | Civil Case Number:<br><br>**CIVIL ACTION**<br><br>**CLASS ACTION COMPLAINT**<br>**AND**<br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1. Daniel Zemel (referred to individually as "Daniel" or "Plaintiff") bring this class action for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of CSC Holdings, LLC ("CSC") and its related entities, subsidiaries and agents in negligently, knowingly, and/or willfully contacting Plaintiffs on Plaintiffs' cellular telephone, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), thereby invading Plaintiffs' privacy. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

2. The TCPA was designed to prevent texts and calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiffs. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

3. In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them, and made specific findings that "[t]echnologies that

1

might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer. TCPA, Pub. L. No. 102-243, § 11. Toward this end, Congress found that:

> [b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, No. 11-C-5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

4. Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call...." *Id.* at §§ 12-13. *See also Mims*, 132 S. Ct. at 744.

5. The Federal Communication Commission ("FCC") has made rulings regarding the TCPA's vicarious liability standards as it relates to telemarketing. As early as 1995, the FCC stated that "[c]alls placed by an agent of the telemarketer are treated as if the telemarketer itself paced the call." See *In re Rules and Regulations Implementing the TCPA of 1991*, 10 FCC Rcd. 12391, 12397 ("The 1995 Ruling.")

6. Case law and the FCC have made clear that a text message is considered a phone call under the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 955 (9th Cir. 2009).

7. Congress recognized that not only can unsolicited calls be a nuisance but may also cause the receiver of the unsolicited messages to incur actual out of pocket losses in the form of paper and toner for unsolicited faxes.

8. With the advancement of technology, numerous courts have recognized the TCPA's applicability to unsolicited text messages to persons' cell phones.

9. Every transmission of a text uses data and the longer the text message the more data is used.

10. Once an unsolicited text message is received, not only is it a nuisance to the receiver, but just as importantly that receiver is forced to incur unwanted messages and/or data charges from their cell phone carrier.

11. As set forth herein that is exactly what occurred to plaintiff and other members of the putative class.

12. Plaintiff and the members of the proposed class received unsolicited sales text messages and incurred additional message and/or data charges to their cell phone accounts all because Defendant wished to advertise and market its products and services for its own benefit

## JURISDICTION AND VENUE

13. This Court has federal question jurisdiction because this case arises out of violations of federal law. *See* 47 U.S.C. § 227(b); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

14. To have standing in federal court, Plaintiff must have suffered a particularized and concrete harm.

15. Unwanted texts and/or calls cause tangible harms and intangible harms.

16. In the recent Supreme Court decision of *Spokeo, Inc. v. Robin*, __ U.S. ____, 2016 WL 282447 (May 16, 2016), the Court stated that one way to establish that an intangible injury is concrete is to evaluate whether it "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American court." *Id* at *7.

17. For example, invasion of privacy is an intangible harm that is recognized by the common law and is recognized as a common law tort.

18. When enacting the TCPA, Congress stressed the purpose of protecting consumers' privacy.

19. As Senator Hollings, the Act's sponsor, stated "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they

force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821-30,822 (1991).

20. In a recent decision discussing Plaintiff's Article III standing for a single call TCPA claim, the Third Circuit stated "in asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, her complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA." In doing so, the Third Circuit ruled that Plaintiff had sufficiently alleged a concrete harm sufficient to confer Article III standing. *Sussino v. Work Out World,* Case No. 16-3277 (July 10, 2017).

21. Venue is proper in the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(b)(2) because the Defendant is located and conducts business in this judicial district and because a substantial part of the act and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

22. Plaintiff is, and at all times mentioned herein was, an individual and citizen of the State of New Jersey.

23. Upon information and belief, CSC is a Delaware Corporation, headquartered in Nassau County, New York and is a "person" as defined by 47 U.S.C. § 153 (39). Defendant is and at all relevant times mentioned herein a "person" as defined by 47 U.S.C. § 153(39).

## FACTUAL ALLEGATIONS

24. On September 9, 2015, and despite a lack of consent or prior relationship with Defendant, Plaintiff began receiving unsolicited text messages to his wireless phone from the short code 608-91, a number owned by CSC Holdings.

25. Specifically, on September 9, 2015, Defendant set a text message to Plaintiff's wireless phone stating, "Your mobile number was added for Optimum ID joan 2325. Send STOP to opt out, HELP for info."



26.     In order to ascertain who was sending Plaintiff this nuisance text, Plaintiff sent the word "HELP" to the short code 608-91.

27.     Thereafter, Defendant sent the following: "For fast and easy assistance, please visit optimum.net/support to live chat 24/7. StdMsgChrgsApply."

28.     Plaintiff then sent the word "STOP" to the short code 608-91.

29.     In reply, Defendant sent the following, non-confirmatory text message, "Let us know which messages you wish to stop: Service Alerts-STOP SRVC, Appointment Alerts-STOP APPT."

30.     By continuing to text the Plaintiff after Plaintiff texted STOP, Plaintiff was harmed in the exact way that Congress sought to protect in enacting the TCPA.

31.     These unsolicited text messages placed to Plaintiff's wireless telephone were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227

(a)(1), which had the capacity to produce or store numbers randomly or sequentially, and to dial such numbers, to place text message calls to Plaintiff's cellular telephone.

32. The telephone number that Defendant, or its agents, texted was assigned to a cellular telephone service for which Plaintiff incurred monthly charges pursuant to 47 U.S.C. § 227 (b)(1).

33. These text messages constitute calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

34. Plaintiff did not provide Defendant or its agents prior express consent to receive unsolicited text messages pursuant to 47 U.S.C. § 227 (b)(1)(A) and revoked any alleged prior express consent, yet still continued to receive text messages.

35. These text messages by Defendant or its agents therefore violated 47 U.S.C. § 227(b)(1).

36. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute.

## CLASS ACTION ALLEGATIONS

37. Plaintiffs bring this action individually and on behalf of all others similarly situated ("the Class").

38. Plaintiffs represent, and are members of, the Class, consisting of:

> CLASS A: All persons within the United States who received any unsolicited text message from Defendant or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), which text messages by Defendant or its agents were not made for emergency purposes or with the recipients' prior express consent, within four years prior to the filing of this Complaint through the date of final approval.

> CLASS B: All persons within the United States who received any text message from Defendant or its agents on their cellular telephones through the use of any automatic telephone dialing system as set forth in 47 U.S.C. § 227(b)(1)(A)(3), after the person texted back the word STOP, which text messages by Defendant or its agents were not made for emergency purposes, within four years prior to the filing of this Complaint through the date of final approval.

39. Defendant and its employees or agents are excluded from the Class. Plaintiffs do not know the number of members in the Class, but believe the Class members number in the tens of thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

40. Plaintiffs and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant illegally contacted Plaintiffs and the Class members via their cellular telephones thereby causing Plaintiffs and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiffs and the Class members previously paid, by having to retrieve or administer messages left by Defendant during those illegal calls, and invading the privacy of said Plaintiffs and the Class members. Plaintiffs and the Class members were damaged thereby.

41. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

42. The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the Court. The Class can be identified through Defendants' records or Defendants' agent's records.

43. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

1. Whether Defendants made any text messages (other than a call made for emergency purposes or made with the prior express consent of the called party) to Class members using any automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a telephone service;

2. Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

3. Whether Defendants should be enjoined from engaging in such conduct in the future.

44. As persons who received text messages from an automatic telephone dialing system or an artificial or prerecorded voice, without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class. Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interest antagonistic to any member of the Class.

45. Plaintiffs and the members of the Class have all suffered irreparable harm as a result of Defendant's unlawful and wrongful conduct. Absent a class action, the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few if any Class members could afford to seek legal redress for the wrongs complained of herein.

46. Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the TCPA.

47. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal and California law. The interest of Class members in individually controlling the prosecution of

separate claims against Defendants is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

48. Defendants have acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 *ET SEQ.***

49. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

50. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

51. As a result of Defendants negligent violations of 47 U.S.C. § 227 *et seq.*, Plaintiffs and the Class are entitled to an award of $500.00 in statutory damages for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

52. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

### COUNT II
**KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227 *ET SEQ.***

53. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

54. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 *et seq.*

55. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and each of the Class are entitled to treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

56. Plaintiffs and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, on Plaintiff's own behalf and on behalf of the Class members, respectfully pray for the following relief:

a. On the First Count for Negligent Violations of the TCPA, 47 U.S.C. §227 *et seq.*, Plaintiff seeks: (i) for herself and each Class member $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) as a result of Defendant's negligent violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and (iii) any other relief the Court may deem just and proper; and

b. On the Second Count for Knowing and/or Willful Violation of the TCPA, 47 U.S.C. §227 *et seq.*, Plaintiff seeks: (i) for herself and each Class member treble damages, as provided by statute, up to $1,500.00 for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C) as a result of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1); (ii) injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A); and any other relief the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs, on behalf of themselves and all others similarly situated, demands a trial by jury on all questions of fact raised by the complaint.

Date:   February 20, 2018

                **MARCUS & ZELMAN, LLC**

                */s/ Ari Marcus*
                Ari Marcus, Esq.
                1500 Allaire Avenue, Suite 101
                Ocean, New Jersey 07712
                (732) 695-3282 telephone
                (732) 298-6256 facsimile
                Ari@MarcusZelman.com
                *Attorneys for Plaintiffs, Daniel Zemel*
                *Individually and on Behalf of All Others*
                *Similarly Situated*

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I, Ari H. Marcus, the undersigned attorney of record for Plaintiff, do hereby certify to my own knowledge and based upon information available to me at my office, the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.

Dated: February 20, 2018              */s/ Ari Marcus*
                                                  Ari Marcus, Esq.