UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---------------------------------------------------
DANIEL ZEMEL, on behalf of himself, and :
all others similarly situated,           :
                                         :   Civil Action No. 18-2340-BRM-DEA
          Plaintiff,            :
                                         :
          v.                    :   **OPINION**
                                         :
CSC HOLDINGS LLC,                        :
                                         :
         Defendant.               :
---------------------------------------------------

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant CSC Holdings, LLC's ("CSC Holdings") Motion to Dismiss the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative stay the matter. (ECF No. 8.) Plaintiff Daniel Zemel ("Zemel") opposes this Motion. (ECF No. 14.) Having reviewed the parties' submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below, and for good cause shown, CSC Holdings' Motion to Dismiss is **DENIED in part** and **GRANTED in part.** CSC Holdings' Motion to Stay is **DENIED**.

**I.    BACKGROUND**

For the purpose of this Motion to Dismiss, the Court accepts the factual allegations in the Complaint as true and draws all inferences in the light most favorable to Zemel. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Further, the Court also considers any "document *integral to or explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

On September 9, 2015, Zemel "began receiving unsolicited text messages to his wireless phone from the short code 608-91," a number allegedly owned by CSC Holdings. (Compl. (ECF No. 1) at ¶ 24.) Zemel contends he never consented to receive the text messages and denies any prior relationship with CSC Holdings. (*Id.*) Three text messages were sent by CSC Holdings and Zemel responded to two of the messages. The text messages proceeded as follows:

> [CSC Holdings:] Your mobile number was added for Optimum ID joan2325. Send STOP to opt out, HELP for info.
>
> [Zemel:] Help
>
> [CSC Holdings:] For fast and easy assistance, please visit optimum.net/support to live chat 24/7. StdMsgChrgsApply.
>
> [Zemel:] Stop
>
> [CSC Holdings:] Let us know which messages you wish to stop: Service Alerts-STOP SRVC, Appointment Alerts-STOP APPT

(*Id.* at ¶ 25.) Zemel alleges he responded "Help" "[i]n order to ascertain who was sending Plaintiff this nuisance text." (*Id.* at ¶ 26.)

Zemel alleges these unsolicited text messages were placed via an "automatic telephone dialing system," ("ATDS") as defined by 47 U.S.C. § 227(a)(1), "which had the capacity to produce or store numbers randomly or sequentially, to dial such numbers, to place text message calls to [Zemel]'s cellular telephone." (*Id.* at ¶ 31.) He further contends the wireless number CSC Holdings messaged was "assigned to a cellular telephone service for which [Zemel] incurred monthly charges pursuant to 477 U.S.C. § 227(b)(1)." (*Id.* at ¶ 32.) Zemel asserts the unsolicited text messages harmed him and proposed class members by causing them to incur additional message and/or data charges to their cell phone accounts. (*Id.* at ¶¶ 14, 40.) Plaintiff also alleges the text messages were a nuisance. (*Id.* at ¶ 26.)

Zemel filed a class action on July 6, 2016. *Zemel v. CSC Holdings, LLC*, No. 16-4064. On September 19, 2016, CSC Holdings moved to dismiss all claims, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), arguing Zemel could not state a claim under the TCPA in relevant part because Zemel lacked Article III standing to bring a TCPA claim. (Docket No. 16-4064 (ECF No. 19-1) at 29-31.) On April 26, 2017, the Court granted CSC Holdings motion to dismiss finding Zemel lacked Article III standing to bring his TCPA claims. (Docket No. 16-4064 (ECF No. 36-1).) However, a subsequent Third Circuit opinion held an allegation of a single call automatically satisfies Article III standing in a TCPA case. *Susinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017). As a result of the Third Circuit decision, on February 20, 2018, Zemel filed this class action Complaint alleging: (1) negligent violations of the TCPA; and (2) knowing and/or willful violations of the TCPA. (*See* ECF No. 1.) On April 27, 2018, CSC Holdings filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) or in the alternative to stay the matter. (ECF No. 8.) Zemel opposes the Motion. (ECF No. 14.)

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips*, 515 F.3d at 228. "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the

complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

While as a general rule, a court many not consider anything beyond the four corners of the complaint on a motion to dismiss pursuant to 12(b)(6), the Third Circuit has held "a court may consider certain narrowly defined types of material without converting the motion to dismiss [to one for summary judgment pursuant under Rule 56]." *In re Rockefeller Ctr. Props. Sec. Litig.,* 184 F.3d 280, 287 (3d Cir. 1999). Specifically, courts may consider any "'document *integral to or*

*explicitly relied upon* in the complaint." *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d at 1426.

III. DECISION

A. Motion to Dismiss Pursuant to 12(b)(6)

1. ATDS

CSC Holdings argues Zemel has failed to state a claim under the TCPA because he has not adequately plead the use of an ATDS. (ECF No. 8-1 at 7-14.) Zemel argues he sufficiently alleged the use of an ATDS at this stage of the litigation. (ECF No. 14 at 3.)

Congress enacted the TCPA "to protect individual consumers from receiving intrusive and unwanted calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013). "The TCPA's prohibition on automated dialing applies to both voice calls and text messages." *Id.* at 269 n.2. The TCPA prohibits a party from using an ATDS "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party," unless the call falls within one of the statute's enumerated exemptions. 47 U.S.C. § 227(b)(1)(B). The exemptions include "calls that are not made for a commercial purpose" and commercial calls that "do not include the transmission of any unsolicited advertisement." 47 U.S.C. § 227(b)(2)(B). Accordingly, the TCPA provides, *inter alia*, that "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service" is a violation of the Act and the receiver of the call(s) may be entitled to injunctive relief and statutory damages. 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(3). "[A]utodialed calls—to both cellular phones and land-lines—are lawful so long as the recipient has granted permission to be called at

the number which they have given, absent instructions to the contrary." *Gager*, 727 F.3d at 268 (citations omitted).

To state a cause of action under the TCPA, a plaintiff must allege: "(1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent." *Martinez v. TD Bank USA*, No. 15-7712, 2017 WL 2829601, at *4 (D.N.J. 2017) (citations omitted). The TCPA defines an ATDS as "equipment which has the capacity . . . (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

The only issue before the Court is whether Zemel has pled facts that support a finding that CSC Holdings used an ATDS in such a manner that violates the TCPA. "To satisfy this element, courts permit the allegation of an automatic system to be pled on information or belief, but require additional factual information, such as the absence of a relationship between the parties and the random nature of the automation device." *Norman v. Sito Mobile Sols.*, No. 17-2215, 2017 WL 1330199, at *3 (D.N.J. Apr. 6, 2017); *See In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (finding the complaint sufficient when plaintiffs stated that they "received a text message from an SMS short code and that the message was sent by a machine with the capacity to store or produce random telephone numbers").

Other courts, including courts within this District, have found that "[a] bare allegation that defendants used an ATDS is not enough." *See, e.g., Trumper v. GE Capital Retail Bank*, 79 F. Supp. 3d 511 (D.N.J. 2014); *Aikens v. Synchrony Fin. d/b/a Synchrony Bank*, No 15-10058, 2015 WL 5818911, at *3 (E.D. Mich. July 31, 2015), *report and recommendation adopted*, 2015 WL 5818860, at *1 (E.D. Mich. Aug. 31, 2015) (noting plaintiff must provide "at least some [ ] detail regarding the content of the messages or calls, thereby rendering the claim that an ATDS was used

6

more plausible"); *Curry v. Synchrony Bank, N.A.*, No. 15-322, 2015 WL 7015311, at *2 (S.D. Miss. Nov. 12, 2015); *Baranski v. NCO Fin. Sys., Inc.*, No. 13-3449, 2014 WL 1155304, at *6 (E.D.N.Y. Mar. 21, 2014) (noting that "the vast majority of courts to have considered the issue have found that '[a] bare allegation that defendants used an ATDS is not enough'"); *Brailey v. F.H. Cann & Assocs., Inc.*, No. 14-0754, 2014 WL 7639909, at *8 (W.D. La. Dec. 5, 2014).

A plaintiff must provide "at least some [] detail regarding the content of the messages or calls, thereby rending the claim that an ATDS was used more plausible." *Aikens*, 2015 WL 5818911, at *3; *see Todd v. Citibank*, No. 16-5204, 2017 WL 1502796, at *6 (D.N.J. Apr. 26, 2017). This Court previously denied a defendant's motion to dismiss finding that plaintiff's allegations regarding the content of the alleged messages allowed the Court to infer that calls were placed using an ATDS. *Todd*, 2017 WL 1502796, at *6. Specifically, the Court noted the plaintiff alleged:

> "she heard a *silence* before a recording began, convincing Plaintiff that Defendant's calls were '*robo-calls*.'" Plaintiff further alleges "Defendant's recording was a pre-recorded voice stating that Plaintiff's husband, Joseph Todd, should call Defendant at 800 298 6359 and enter a 'key code' number to hear a message." Both of these allegations indicate and allow the Court to infer Citibank placed the calls using an ATDS.

*Id.* (internal citations omitted); *see Legg v. Voice Media Group, Inc.*, 990 F. Supp. 2d 1351, 1354 (S.D. Fla. 2014) (finding the plaintiff's allegations the defendant sent mass text messages from a "short code," that the defendant was present in over 50 major metropolitan areas, and that the defendant received "voluminous" consumer complaints about similar text messages received from Defendant "could only be achieved via an [ATDS] sufficient to support a reasonable inference that . . . such a system" was utilized); *Maier v. J.C. Penney Corp.*, No. 13-163, 2013 WL 3006415, at *4 (S.D. Cal. June 13, 2013) (pleading sufficient based on single unsolicited and impersonal text

7

message sent via "short code"); *In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d 1253, 1260 (S.D. Cal. 2012) (finding that presence of a "short code" was a factor indicating ATDS use despite preexisting personal relationship between parties); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1172 (N.D. Cal. 2010) (finding that impersonal nature of messages, number of messages, "short code" sending number, and lack of relationship with plaintiff all supported inference of ATDS use). As explained in *Mogadam v. Fast Eviction Serv.*, No. 14-01912, 2015 WL 1534450, at *3 (C.D. Cal. Mar. 30, 2015):

> No single fact in particular must necessarily be present or absent to meet the sufficiency requirement for pleading the use of an ATDS in a TCPA claim; courts have considered the nature of the message, the length of the sending number, the number of messages, and the relationship between the parties.

While this Court has found that allegations merely stating a defendant used an ATDS or "an artificial or prerecorded voice" is insufficient to state a TCPA claim, *Trumper*, 79 F. Supp. 3d at 513, Zemel has plead more than just a conclusory allegation. He has alleged that "despite a lack of consent or prior relationship with [CSC Holdings], [he] began receiving unsolicited text messages to his wireless phone from the short code 608-91, a number owned by CSC Holdings." (ECF No. 1 ¶ 24); *see In re Jiffy Lube Int'l, Inc., Text Spam Litig.*, 847 F. Supp. 2d at 1260 (presence of "short code" sending number was a factor indicating ATDS use despite preexisting personal relationship between parties). This more than satisfies his burden.

CSC Holdings argues, "The only reasonable inference from [Zemel's] factual allegation[, 'Your mobile number was added for Optimum ID joan 2325,] is that the number was added to a customer's or authorized user's account by a live person and the number was contacted as a result of this affirmative human action, not by the use of an ATDS situation." (ECF No. 8-1 at 10-11.) While that may prove to be the case, simply presenting an alternative explanation for the facts

alleged in the Complaint does not mean the Complaint fails to plausibly state a claim at this stage. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("Plausibility" in [the context of *Twombly* and *Iqbal*] does not imply that the district court should decide whose version to believe, or which version is more likely than not. Indeed, the Court expressly distanced itself from the latter approach in *Iqbal*, "the plausibility standard is not akin to a probability requirement." As we understand it, the Court is saying instead that the plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen.") (internal citations omitted). Accordingly, CSC Holdings' Motion is **DENIED** as to this issue.

### 2. CSC Holdings' Second Text Message

CSC Holdings contends Zemel's claims based on the alleged second text message should be dismissed because Zemel consented to the sending of that message. (ECF No. 8-1 at 14.) Zemel does not respond to this argument in its opposition brief. "The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count." *Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010); *see Duran v. Equifirst Corp.*, No. 09–3856, 2010 WL 918444, at *3 (D.N.J. Mar. 12, 2009) (dismissing eleven counts of a complaint because plaintiff waived those counts by failing to respond to the defendant's motion to dismiss those counts).

Nevertheless, the Court finds Zemel consented to receiving the second text message sent by CSC Holdings and therefore fails to state a claim for violation of the TCPA as to that message. The text messages proceeded, in relevant part, as follows:

> [CSC Holdings:] Your mobile number was added for Optimum ID joan2325. Send STOP to opt out, HELP for info.
>
> [Zemel:] Help

9

> [CSC Holdings:] For fast and easy assistance, please visit optimum.net/support to live chat 24/7. StdMsgChrgsApply.

(ECF No. 1 ¶ 25.)

When an individual sends a message inviting a responsive text, there is no TCPA violation. The TCPA prohibits a party from using an ATDS "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior *express consent* of the called party," unless the call falls within one of the statute's enumerated exemptions. 47 U.S.C. § 227(b)(1)(B); *see Rando v. Edible Arrangements Int'l, LLC*, No. 17-701, 2018 WL 1523858, at *6 (D.N.J. Mar. 28, 2018) ("Other courts have held that responding to text messages that include, as here, the clear directive "Reply STOP to cancel" (or "Reply HELP for help, STOP to cancel," or "Text STOP to end, HELP for help + T&C's," fails to state a claim for violation of the TCPA because a plaintiff who does not reply "STOP" but instead texts back a verbose sentence with the same sentiment does not use a reasonable method to revoke consent.") (internal citations omitted). Accordingly, CSC Holdings' Motion to Dismiss any TCPA claims as to the second text message is **GRANTED**.

### 3. CSC Holdings' Third Text Message

CSC Holdings also argues its alleged third text message was a permissible confirmatory message. Again, Zemel does not respond to this argument in its opposition brief other than to say it was "non-confirmatory." (ECF No. 14 at 6.) Therefore, the failure to respond to a substantive argument on its own results in a waiver of that count. *Griglak*, 2010 WL 1424023, at *3. Nevertheless, the Court will address it.

In 2012, the FCC issued a declaratory ruling explaining that certain "one-time texts confirming a request that no further text messages be sent do[] not violate the [TCPA]." *In re Rules*

*& Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 15391, 15394 (2012). Specifically, the FCC ruling provided express consent to receive confirmation test limited to texts that: "1) merely confirm the consumer's opt-out request and do not include any marketing or promotional information; and 2) are the only additional message sent to the consumer after receipt of the opt-out request." *Id.* at 15397. Courts have found "whether the responsive text seeks clarification of plaintiff's intentions or simply confirms plaintiff's decision to opt-out, it does not constitute the sort of automated and intrusive telemarketing communications the TCPA was enacted to combat." *Derby v. AOL, Inc.*, No. 15-00452, 2015 WL 3477658, at *6 (N.D. Cal. June 1, 2015); *Freidman v. Massage Envy Franchising, LCC*, No. 12-02962, 2013 WL 3026641, at *4 (S.D. Cal. June 13, 2013) ("One message seeking clarification is not a 'proliferation of intrusive, nuisance calls' that the TCPA sought to prevent."); *Ryabyshchuck v. Citibank (S. Dakota) N.A.*, No. 11- 1236, 2012 WL 5379143, at *3 (S.D. Cal. Oct. 30, 2012).

Here, the text in dispute was received after Zemel replied STOP to a CSC Holdings text message and states, "Let us know which messages you wish to stop: Service Alerts-STOP SRVC, Appointment Alerts-STOP APPT." (ECF No. 1 ¶ 25.) Not only is this clearly a confirmatory text, not including any marketing material, but it was the only additional text message sent. Therefore, CSC Holdings' Motion to Dismiss any TCPA claim as to the third text message is also **GRANTED**.

### B. Motion to Stay Pending FCC Guidance

CSC Holdings requests a stay of this litigation pending the FCC's interpretations of an ATDS in the wake of *ACA International v. Federal. Communications Commission,* 885 F.3d 687 (D.C. Cir. 2018). Zemel argues a stay should be denied because:

> Zemel will clearly be prejudiced by having to stand by and wait to
> have this matter heard, which will be delayed by a never-ending

> parallel proceeding that may or may not affect this action. . . . Defendant neglects to mention any hardship or inequity that could result form this case proceeding in the ordinary course of litigation. Finally, . . . Defendant offers no explanation of how the FCC's actions would affect the specific factual and legal issues in this action."

(ECF No. 14 at 12.)

This Court has broad discretion to stay proceedings. *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). It is established that, "[i]n the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." *Bechtel Corp. v. Local 215, Laborers' Intern. Union of North America*, 544 F.2d 1207, 1215 (3d Cir. 1976). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936); *United States v. Breyer*, 41 F.3d 884, 893 (3d Cir. 1994) ("The power to stay is incidental to the power inherent in every court to dispose of cases so as to promote their fair and efficient adjudication.") To determine the appropriateness of a stay, courts consider "whether a stay will simplify issues and promote judicial economy, the balance of harm to the parties, and the length of the [ ] stay." *Bais Yaakov of Spring Valley v. Peterson's Nelnet, LLC*, 2011 WL 4056318, at *2 (D.N.J. Sept. 12, 2011) (citation omitted).

The FCC's most recent ATDS rulemaking was struck down by the United States Court of Appeals for the District of Columbia in *ACA International* because it adopted competing interpretations regarding whether the lack of human intervention is a necessary aspect of an ATDS. 885 F.3d at 701-03. After *ACA International*, the FCC issued a public notice on May 14, 2018, seeking public comment on how to interpret the word "capacity" in the statutory definition of ATDS and whether equipment that dials telephone numbers with human intervention—as opposed

to randomly or sequentially—qualifies as an ATDS. (No. 71-3). The comment period for this notice closed on June 28, 2018.

The Court finds a stay is not warranted and will prejudice Zemel. Furthermore, CSC Holdings will not face any hardship or inequity by moving forward with discovery. The FCC has not indicated what action, if any, or when it will take in response to the comments received on this issue. Therefore, this case can potentially remain stale for a long time if a stay is granted. As one court noted, "the FCC has not indicated whether it will pursue a formal rulemaking or some other proceeding following the collection of comments on this issue." *Gould v. Farmers Ins. Exch.*, No. 17-2305, 2018 U.S. Dist. LEXIS 131508, at *4 (E.D. Mo. Aug. 6, 2018) (denying defendants' motion to stay pending rulemaking from the FCC post-*ACA International*).

Moreover, CSC Holdings' alleged hardship of conducting discovery and motion practice is tenuous, at best, because discovery and litigation will still be necessary in this action regardless of FCC's guidance. The identity of the type of device used to transmit the alleged text messages in this matter has not been revealed. (ECF No. 14 at 20.) Therefore, discovery would be needed on this issue regardless of the FCC's guidance.

Moreover, CSC Holdings has not established the FCC proceedings will simplify or streamline the issues in this matter. The purpose of the stay would be to wait for FCC guidance, however, whatever that guidance may reveal will not alter the facts of this case. *See Baum v. ADT LLC d/b/a ADT Security Systems, & Protect Your Home*, No. CV 18-0777, 2018 WL 5255219, at *5 (W.D. Pa. Oct. 22, 2018). Regardless of what the FCC decides, Zemel is entitled to discovery on CSC Holdings' communication devices.

As such, because the requested stay focuses on the law and definition of an ATDS, and not the facts of this case, this Court takes the same approach as *Somogyi* and *Baum* that, "[a]t the

13

conclusion of fact discovery, if appropriate, [Defendant] may renew its motion for a stay if the FCC has not issued its new order or regulations in response to *ACA International*." *Somogyi v. Freedom Mortg. Corp.*, No. 17-6546, 2018 WL 3656158, at *4 (D.N.J. Aug. 2, 2018); *Baum*, 2018 WL 5255219, at *6. Accordingly, CSC Holdings' Motion to Stay is **DENIED**.

**IV. CONCLUSION**

For the reasons set forth above, CSC Holdings' Motion to Dismiss is **DENIED** as to CSC Holdings' alleged first text message but **GRANTED** as to text messages two and three. CSC Holdings' Motion to Stay is **DENIED**.


Date: November 29, 2018                     */s/ Brian R. Martinotti*             
                                            **HON. BRIAN R. MARTINOTTI**
                                            **UNITED STATES DISTRICT JUDGE**

14